IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NURSA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ST. CLOUD ROCHELLE PARK, LLC, and DOES I-X, <br><br> Defendants, <br><br> *and* <br><br><br> NURSA, INC., <br><br> Plaintiff, <br><br> v. <br><br> SOUTH CENTER STREET NURSING HOME, LLC, and DOES I-X, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IMPROPER VENUE, OR IN THE ALTERNATIVE TO TRANSFER VENUE** <br><br> Case Nos. 2:24-cv-00630-JNP-JCB and 2:24-cv-00631-JNP-JCB <br><br> District Judge Jill N. Parrish |

Before the court are two motions to dismiss for lack of personal jurisdiction or improper venue, or in the alternative to transfer venue. Although the motions have been filed in separate actions involving separate defendants, both actions involve the same plaintiff bringing materially identical claims against both defendants, and both defendants are represented by the same counsel,

share a sole managing member, and advance materially identical arguments. For efficiency, then, the court resolves the separate motions in one order.

Plaintiff, a Utah-based software company that connects healthcare facilities with healthcare workers using a proprietary app, sued Defendants, two New Jersey–based facilities providing healthcare services using Nursa's app, for nonpayment. At this stage, the parties disagree about whether this court can hear their dispute and where their dispute should be resolved—here in Utah or out east in New Jersey. As one might expect, Plaintiff believes that this court can hear the cases, so it wants to keep the cases in Utah; Defendants, believing that this court is not a proper venue, want them to be transferred to New Jersey. But under Defendants' theory, the New Jersey court would likely conclude that the cases need to be transferred right back to Utah. This judicial boomerang would benefit no one except the attorneys. And the law does not require this seemingly absurd result because Defendants previously agreed to litigate the cases here in Utah. The court therefore DENIES their motions to dismiss or transfer venue.

## BACKGROUND

In viewing the facts on a motion to dismiss for improper venue, the court "take[s] all allegations in the complaint as true" and "draw[s] all reasonable inferences and resolve[s] all factual conflicts in favor of the plaintiff." *Indymac Mortg. Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001).

Plaintiff Nursa, Inc., is a Utah-based software company that offers an app to connect healthcare facilities with healthcare workers. A facility looking to fill a one-off shift can post the opening on the app, a healthcare worker looking to work extra shifts can apply for the opening, and then the facility can hire the applicant if it is satisfied with his credentials. When a facility posts a shift on the app, Nursa provides an estimated charge for the shift based in part on the

demand at the time, the timing of the shift, and the type of service requested. After a clinician successfully completes and reports a shift, Nursa provides the facility a report of the shift, which is automatically verified if the facility takes no action on it within 48 business hours. Once a shift report is verified, Nursa finalizes the charges, pays the clinician for the work completed, and invoices the facility. In short, Nursa acts as a financial intermediary between the healthcare facility and the healthcare worker.

Defendants St. Cloud Rochelle Park, LLC, dba Alaris Health at the Chateau (aka Alaris Rochelle Park), and South Center Street Nursing Home, LLC, dba Alaris Health at St. Mary's (aka Alaris St. Mary's), are two New Jersey–based healthcare facilities that contracted with Nursa to use its app. Their contracts contained the following forum-selection clause:

> The Parties hereby submit to the jurisdiction of the state and federal courts in Salt Lake County, Utah, and agree that said courts have the sole and exclusive jurisdiction over any and all disputes and causes of action involving such Party that arise out of or relate to this Agreement or its performance . . . .

ECF No. 30-1, at 27 (in case number 2:24-cv-00630).

Defendants used Nursa's app to fill shifts, leading Nursa to pay clinicians for their services, but Defendants have failed to pay Nursa back. Nursa tried to resolve the issue informally but to no avail and ultimately filed suit in this court to recover the outstanding amount under the following theories: breach of contract, breach of the covenant of good faith and fair dealing, breach of contract implied in fact, and unjust enrichment. At the time Nursa filed its complaints, Alaris Rochelle Park had a balance of approximately $250,000, and Alaris St. Mary's had a balance of approximately $1.3 million (including late fees but not including interest). Defendants moved under Rule 12(b)(3) of the Federal Rules of Civil Procedure to dismiss the cases or alternatively

transfer them to New Jersey on the ground that venue is improper in Utah under the venue statute, 28 U.S.C. § 1391.

The day before oral arguments on Defendants' motions, Plaintiff filed a notice of supplemental authority alerting the court to a basis for venue not originally pleaded in its complaints. Defendants understandably requested an opportunity to respond, and following oral arguments, the court gave leave for Plaintiff to amend its complaints to ensure that all issues raised would receive adequate briefing. Plaintiff amended its complaints, and Defendants filed new motions to dismiss, which are now fully briefed and ready for resolution. In these motions, Defendants contest not only venue but also personal jurisdiction.

## ANALYSIS

The court begins with the issue of personal jurisdiction because it "is typically decided in advance of [the issue of] venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). A defendant is subject to a court's personal jurisdiction if the court may exercise its power to hale the defendant in and bind it with a judgment consistent with the Fourteenth Amendment's Due Process Clause. Typically, a court may not exercise personal jurisdiction over a defendant unless it is "at home" in the state where the court sits or has "purposefully avail[ed] itself of the privilege of conducting activities within [that] state." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021) (first quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); and then quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Personal jurisdiction, though, is a "privilege[] of the defendant, rather than [an] absolute stricture[] on the court," so a defendant may consent to the court's personal jurisdiction and thereby waive a personal-jurisdiction challenge. *Leroy*, 443 U.S. at 180. When a defendant consents to the court's personal jurisdiction, the court "need not consider constitutional arguments as to personal

jurisdiction." *Route App, Inc. v. Heuberger*, No. 2:22-cv-00291, 2022 WL 2316377, at *2 (D. Utah June 28, 2022) (cleaned up). And one way to consent to the court's personal jurisdiction is signing a valid forum-selection clause. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005); *see also Olivares v. C.R. Eng., Inc.*, No. 2:22-cv-00123, 2022 WL 3025974, at *2 (D. Utah Aug. 1, 2022) ("The use of a forum selection clause is an example of an express consent to personal jurisdiction." (internal quotation marks omitted)).

Here, both Defendants signed a forum-selection clause under which they "submit[ted] themselves] to the jurisdiction of the state and federal courts in Salt Lake County, Utah." ECF No. 30-1, at 27 (in case number 2:24-cv-00630). Contradicting the plain text of the forum-selection clause, however, they insist that they did not submit to this court's personal jurisdiction for two reasons: first, as they see it, the clause explicitly excludes from its reach any matter subject to arbitration, including this dispute; and second, it is purely a venue clause. Consider the full text of the clause at issue (the provisions they focus on are italicized, and the provision in which they submit to jurisdiction is underlined):

> *Other than the Arbitration Agreement*, PAGA waiver, and Class Action Waiver, which shall be governed by the laws described therein, this Agreement shall be construed according to the laws of the State of Utah without regard to conflict of laws provisions thereof. <u>The Parties hereby submit to the jurisdiction of the state and federal courts in Salt Lake County, Utah</u>, and agree that said courts have the sole and exclusive jurisdiction over any and all disputes and causes of action involving such Party that arise out of or relate to this Agreement or its performance *despite any venue requirement by local statute or rule*.

*Id.* (emphases added). Notice that the sentence containing the language "submit to the jurisdiction of the state and federal courts in Salt Lake County, Utah" appears at the very beginning of the second sentence. As Defendants see the issue, this dispute is subject to arbitration and therefore falls into the carveout created by the first five words of the first sentence, and the last nine words

of the second sentence indicate that the clause as a whole is merely a venue clause, not one subjecting them to this court's personal jurisdiction.

The court finds Defendants' reading of the clause entirely unconvincing. The first sentence, which contains the carveout for the arbitration agreement, is a choice-of-law provision; it selects Utah law to govern any disputes between the parties except for disputes falling into one of the three categories listed (arbitration, PAGA, or class action), which are governed by other laws. That first sentence contains nothing to suggest that the parties did not consent to the jurisdiction of courts in Utah, including for cases that would eventually be subject to arbitration. The language in which Defendants submit to the jurisdiction of Utah courts appears in a separate sentence and is wholly unaffected by the three specified carveout categories from the first sentence. The language about submitting to jurisdiction is also unaffected by the mention of venue later on. Like the sentence containing the arbitration carveout, the clause mentioning venue contains nothing to negate the clear, unequivocal submission to jurisdiction that immediately precedes it in the sentence. If the portion about venue bears at all on the language about jurisdiction, it evinces an intent to submit to this court's jurisdiction regardless of whether venue is proper here under a local statute or rule—in other words, to make it unmissable that the parties have consented to jurisdiction here. And what kind of jurisdiction did the parties consent to? Subject-matter jurisdiction does not depend on the consent of the parties because it is an inherent limitation of the court's authority to hear a case, and the only other kind of jurisdiction that could be relevant here is personal jurisdiction. So, the parties must have consented to personal jurisdiction in Utah through the forum-selection clause, and the court must deny Defendants' motions to dismiss for lack of personal jurisdiction.

Now onto venue. Venue refers to the place where a case is being heard or should be heard. Rule 12(b)(3) is the mechanism by which a defendant may object to the plaintiff's choice of venue as "improper." FED. R. CIV. P. 12(b)(3). "[W]hether venue is 'wrong' or 'improper,'" in turn, "is generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013); *see also* 28 U.S.C. § 1391(a)(1) ("[T]his section shall govern the venue of all civil actions brought in district courts of the United States."). Section 1391(b) provides three bases for proper venue: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). The statute goes on to provide that "an entity with the capacity to sue and be sued . . . , whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2).

As explained above, Defendants are subject to this court's personal jurisdiction in these actions. They are also entities. So, they are considered residents of Utah for these actions under the venue statute. 28 U.S.C. § 1391(c)(2). And because they are both considered residents of Utah for venue purposes, venue of these actions is proper in this court under the first of the three bases for venue under the venue statute. *Id.* § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the

district is located."). Accordingly, venue is proper here, and the court denies Defendants' motions to dismiss or transfer for improper venue.[1]

No more is necessary to resolve the parties' venue dispute. Nevertheless, the court considers it prudent to say a few words about the Supreme Court's venue decision in *Atlantic Marine*, 571 U.S. 49, which has prompted considerable confusion in the federal courts and takes center stage in the parties' briefing. Assume the following hypothetical for this discussion: the parties have a forum-selection clause selecting Utah, but venue is still not proper under any of the three bases outlined in § 1391(b). This situation could arise, for example, in the case of a natural-

---

[1] Nursa also observes that Defendants failed to assert the defense of personal jurisdiction in their initial motions to dismiss. So, Nursa argues that Defendants waived any challenge to personal jurisdiction, are now subject to the court's personal jurisdiction, and therefore should be considered residents of Utah under the venue statute, 28 U.S.C. § 1391(c)(2). Although it is true that most Rule 12(b) defenses not asserted in a motion to dismiss are waived (including the defense of personal jurisdiction), FED. R. CIV. P. 12(h), the court finds Nursa's argument problematic for two reasons.

First, on the facts of this case, it reeks of gamesmanship. The court identified a defect in Nursa's complaints and gave Nursa an opportunity to amend its complaints, which rendered the original complaints and the original motions to dismiss "of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991). While Nursa wants the court to overlook the deficiency in its original filings, it wants to trap Defendants with what it sees as a deficiency in their original filings. Nursa cannot have it both ways.

Second, Nursa's argument more generally would imply that an entity defendant that fails to raise a defense of personal jurisdiction automatically waives not only the defense of personal jurisdiction but effectively also the defense of improper venue. At least one court has adopted this view, *see MVT Servs., LLC v. Great W. Cas. Co.*, No. 18-1128, 2019 WL 2287710 (D.N.M. May 29, 2019), but this court is skeptical. The Supreme Court has held that the propriety of venue under § 1404(a), the statute permitting change of venue for the convenience of the parties, depends on the facts as they existed at the time the suit was filed. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). It follows more generally that "[w]hen determining personal jurisdiction for venue purposes, the court must make a separate inquiry into personal jurisdiction as it existed when the complaints were filed, irrespective of subsequent consent or waiver." *Oden Metro Turfing, Inc. v. Cont'l Cas. Co.*, No. 12-1547, 2012 WL 5423704, at *6 (W.D. La. Oct. 10, 2012). Thus, it should not matter for venue purposes whether the defendant failed to assert a defense of personal jurisdiction at the appropriate time.

person defendant, who unlike an entity is not considered a resident of the forum for venue purposes just because he is subject to personal jurisdiction in the forum. *See* 28 U.S.C. § 1391(c)(2) ("[A]n *entity* with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." (emphasis added)).

The question then becomes whether a forum-selection clause alone can render venue proper where it would otherwise be improper. This question has split lower courts, and answering it requires careful attention to Rule 12(b)(3), § 1391(b), and two other statutory provisions: §§ 1404(a) and 1406(a). Section 1404(a), placed under the heading "Change of venue," focuses on convenience and consent and provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1406, placed under the heading "Cure or waiver of defects," addresses improper venue and provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a).

The Supreme Court's decision in *Atlantic Marine* addresses the interplay between these provisions. In that case, the Court answered in the negative the related question of whether a forum-selection clause could render improper a venue that was otherwise proper under the statute. The Court explained that whether venue is wrong or improper depends on "whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine*, 571 U.S. at 56. "If it does, venue is proper; if it does not, venue is improper . . . ." *Id.* The Court clarified that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls

9

into one of the categories of cases listed in § 1391(b)," meaning that "the federal venue provisions [in § 1391] . . . alone define whether venue exists in a given forum." *Id.* It follows, then, that if venue is improper and the defendant brings a Rule 12(b)(3) challenge, "the case *must* be dismissed or transferred under § 1406(a)." *Id.* (emphasis added). Even though a forum-selection clause is irrelevant to the question of whether venue is proper in a given court, the clause "may be enforced through a motion to transfer under § 1404(a)." *Id.* at 59.

If venue were not proper in Utah, given *Atlantic Marine*'s reading of Rule 12(b)(3) and the venue provisions, this court would have to dismiss or transfer these cases under § 1406(a), regardless of the parties' forum-selection clause naming Utah as the site for resolving their dispute. *Howmedica Osteonics Corp. v. DJO Global, Inc.*, No. 16-2330, 2017 WL 1136671, at *4–5 (D.N.J. Mar. 27, 2017) (transferring case despite forum-selection clause because, as the court saw it, venue was improper under § 1391(b)); *G4S Tech., LLC v. WCC Cable, Inc.*, No. 8:17-cv-00182, 2017 WL 4564726, at *2–3 (D. Neb. Oct. 10, 2017) (same). Many courts, though, disagree with this conclusion, and it is worth considering some of their common objections.

First, one could observe (as Nursa does in its briefing) that *Atlantic Marine* confronted essentially the "opposite" question as the one being discussed here. *Nymbus, Inc. v. Sharp*, No. 3:17-cv-01113, 2018 WL 705003, at *6 (D. Conn. Feb. 5, 2018). That is true. In *Alantic Marine*, the parties' contract contained a forum-selection clause pointing to Virginia. *Atl. Marine*, 571 U.S. at 53. When one party sued the other in Texas (where venue was proper under § 1391), the opposing party argued that the forum-selection clause made venue there improper. *Id.* In rejecting this argument, the Court decided that a forum-selection clause could not make an otherwise proper venue improper. *Id.* at 57, 59. The Court did not address the question presented in this discussion— whether a forum-selection clause can render proper an otherwise improper venue.

Second, one could point out (as Nursa does) that *Atlantic Marine* did not disturb the longstanding principle that "forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64; *see also id.* at 66 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."). True, the opinion itself invoked and reiterated this longstanding principle. And the strong policy of enforcing forum-selection clauses, the argument goes, makes particular sense because venue, like personal jurisdiction, is a "personal privilege[] of the defendant, rather than [an] absolute stricture[] on the court," meaning that it "may be waived." *Leroy*, 443 U.S. at 180; *see also BMO Harris Bank, N.A. v. McM, Inc.*, No. 17-335, 2017 WL 3443238, at *3 (D. Minn. Aug. 8, 2017) ("[W]hen a party agrees to a forum-selection clause, that party waives the right to challenge the preselected forum as inconvenient."), *Servpro Indus., Inc. v. JP Penn Restoration Servs.*, No. 3-16-0298, 2016 WL 5109947, at *2 (M.D. Tenn. Sept. 20, 2016) ("The principle that a valid forum-selection clause should be given controlling weight . . . applies even more strongly where . . . the defendant seeks to transfer the case out of the agreed upon forum.").

And third, "applying *Atlantic Marine* strictly in every Section 1391 venue analysis could lead to unanticipated results in some cases." *Howmedica Osteonics*, 2017 WL 1136671, at *5 n.6. Take the hypothetical here for example: the parties have a forum-selection clause selecting Utah, yet venue is not proper in Utah under § 1391. In this situation, the court would transfer these cases to the District of New Jersey under § 1406(a) because of improper venue only to have the district court in New Jersey enforce the forum-selection clause and transfer the cases back to this court under § 1404(a). (Section 1404(a) permits transfer under a forum-selection clause to a district or division that would otherwise be improper. *See United Nat. Foods, Inc. v. Maciel*, No. 24-2610, 2025 WL 1047519, at *4 (D. Minn. Apr. 7, 2025).) Avoiding a judicial boomerang of these sorts

would indisputably "make[] practical sense in terms of judicial efficiency." *Huawei Techs. Co. v. Huang*, No. 4:17-cv-00893, 2018 WL 1964180, at *9 (E.D. Tex. Apr. 25, 2018); *see also United Nat. Foods*, 2025 WL 1047519, at *5 (explaining that a strict reading of *Atlantic Marine* "would make little practical sense" in cases like this one).

  These objections are valid, but they cannot displace the *Atlantic Marine* Court's commands. Even though the Court's opinion addressed the opposite question than the one in the current hypothetical, the relevant statutory provisions are the same, and the Court's interpretation of them remains binding. The key to understanding the *Atlantic Marine* opinion is distinguishing between the two separate questions it addresses: first, what makes venue proper or improper (call this the § 1391(b) inquiry), and second, how a court should enforce a forum-selection clause (call this the § 1404(a) inquiry). *See Howmedica Osteonics*, 2017 WL 1136671, at *3 (distinguishing between these two questions). The former is resolved in part II of the Court's opinion and the latter in part III.

  Part II of the Court's opinion makes very clear that, as noted above, "venue is proper" if "the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine*, 571 U.S. at 56. "[I]f it does not, venue is improper, and the case must be dismissed or transferred . . . ." *Id.* And once again, "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.*

  Part III explains that *if venue is proper*, then a forum-selection clause "may be enforced through a motion to transfer under § 1404(a)." *Id.* at 59. Recall that § 1404(a) permits "a district court [to] transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" for "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Ordinarily, "a district court considering a § 1404(a)

12

motion . . . must evaluate both the convenience of the parties and various public-interest considerations," such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 & n.6 (alteration in original) (internal quotation marks omitted). But when the parties' contract includes a forum-selection clause, "district courts [must] adjust their usual § 1404(a) analysis" because "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 63 (internal quotation marks omitted). Specifically, "a district court may consider arguments about public-interest factors only" because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient." *Id.* at 64. Crucially, though, the district court considering these arguments about public-interest factors must be one with proper venue in the first place if the defendant has argued that venue is improper.

To sum up, then, the § 1391(b) inquiry (whether venue is proper) is separate from the § 1404(a) inquiry (whether venue is convenient). Whether venue is proper is determined exclusively under § 1391(b), and whether venue is convenient is determined under § 1404(a). A forum-selection clause does not affect the propriety of venue under § 1391(b) (except through the venue statute's residency provisions), but it does waive a party's right to challenge a venue as inconvenient under § 1404(a).

In this case, Defendants argue that venue is improper under § 1391(b), meaning that the dispute here concerns only the § 1391(b) inquiry. As such, again assuming the hypothetical for this discussion, the court would be bound by the Supreme Court's language in part II of *Atlantic Marine* interpreting § 1391(b) and would not be able to consider the parties' forum-selection clause. *See*

13

*G4S Tech.*, 2017 WL 4564726, at *3 ("[T]he Supreme Court's interpretation of § 1391 squarely applies to the present case [raising the question of whether a forum-selection clause can make proper an otherwise improper venue]."); *Howmedica Osteonics*, 2017 WL 1136671, at *4 ("[A] forum selection clause is not considered in a Section 1391 review."). The language from *Atlantic Marine* about waiver on which Nursa relies is found in part III of the opinion, which addresses the § 1404(a) inquiry, not presented by Defendants' motions at all. *See Howmedica Osteonics*, 2017 WL 1136671, at *4 (explaining that "Section 1404(a)," which can be used to enforce a forum-selection clause, "is inapplicable at th[e § 1391(b)] stage"). Venue would be improper under § 1391(b), so the court would have to dismiss or transfer the cases. And since generally "it is preferable to transfer a case to an appropriate federal forum rather than dismiss it," the court would transfer the cases to the District of New Jersey under § 1406(a). *Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 58 (E.D. Pa. 2024). Such a holding—which would likely be warranted if Defendants here were natural persons—would understandably appear to be no more than an exercise in judicial jiu-jitsu carrying the contemptible consequence of packing the parties off on a pointless peregrination to the Garden State since Nursa would then move to transfer venue to the District of Utah under § 1404(a), bringing the case right back to where it began, which would be an utter waste of the litigants' time and money, enriching only the attorneys.

Fortunately, the facts of this case do not require such a judicial boomerang because, to sum up again, Defendants signed a forum-selection clause selecting Utah and thereby consented to

personal jurisdiction here. Since they are entities, that consent makes them residents of Utah for venue purposes under § 1391(c)(2) and makes venue proper under § 1391(b)(1).[2]

## CONCLUSION AND ORDER

For the reasons above, the court **DENIES** Defendants' motions to dismiss or transfer the cases to New Jersey.

Signed August 14, 2025.

BY THE COURT

Jill N. Parrish
United States District Court Judge

---

[2] The court's holding today should not be understood to mean that Defendants waived their right to challenge venue under § 1391(b) by signing a forum-selection clause. Rather, the court holds only that Defendants' signing the forum-selection clause makes venue proper under § 1391(b)(1) because of the special residency provision of § 1391(c)(2). Although the court does not decide the issue here, parties could plausibly include a clause in their contract explicitly waiving the right to challenge venue under § 1391(b). For example, in a case called *Servpro Industries*, the parties' contract included the following sentence immediately after their forum-selection clause: "[The franchise operator] waives any objection it may have to either the jurisdiction or venue of [the] Courts [in Tennessee]." *Servpro Indus., Inc. v. JP Penn Restoration Servs.*, No. 3-16-0298, 2016 WL 5109947, at *1 (M.D. Tenn. Sept. 20, 2016). Had Nursa's contract with Defendants included a similar clause, this court potentially could have ruled that Defendants had waived their right to raise a § 1391(b) challenge altogether. *See G4S Tech., LLC v. WCC Cable, Inc.*, No. 8:17CV182, 2017 WL 4564726, at *3 (D. Neb. Oct. 10, 2017).